**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CATALYST OUTDOOR ADVERTISING, LLC** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **JENNIFER DOUGLAS** | : | **NO. 18-1470** |

**MEMORANDUM OPINION**

**Savage, J.**                                                                                         **May 24, 2018**

Catalyst Outdoor Advertising, LLC (Catalyst) moves for a preliminary injunction enjoining its former employee, Jennifer Douglas, from continuing her employment with an alleged competitor. It seeks to enforce the non-compete and non-solicitation provisions in her employment agreement.[1] Central to the dispute is the agreement's failure to define the geographic area where Douglas may not compete and solicit. The dispositive issue is whether she works for a company that actually competes in the same market with Catalyst.

Douglas, who now sells advertising space in New York City, argues that the absence of a geographic limitation on the non-competition bar renders the agreement unreasonably broad. She contends that even if the non-compete agreement were enforceable, Catalyst and her new employer, City Outdoor, LLC (City Outdoor), do not compete in the same market.[2] She maintains that City Outdoor operates exclusively in Manhattan and the Bronx, and Catalyst does not.

After reviewing the parties' submissions and after a hearing, we shall deny the

---

[1] Mot. for Prelim. Inj. (Doc. No. 4-1) at 1, 4.

[2] Opp'n to Mot. for Prelim. Inj. (Doc. No. 19) at 1–2.

motion for a preliminary injunction. City Outdoor operates exclusively in New York City. Catalyst, on the other hand, operates billboards in Southeastern Pennsylvania and one in New Jersey. It has limited plans to develop in New York and no plans to develop in New York City. Because we find the two companies do not compete in the same market, we shall not enjoin Douglas from working for City Outdoor in New York.

**Factual Background**

When Catalyst, an outdoor advertising company that acquires and rents billboard space, hired Douglas in February 2016 to grow its business nationally, she signed an employment agreement containing non-competition and non-solicitation clauses.[3] Both provisions have a time limit of two years. Neither has a geographic limitation. The non-competition provides in part:

> [F]or the period of two (2) years following the voluntary or involuntary termination of Employee's [Douglas'] employment with Employer [Catalyst], the Employee [Douglas] agrees and covenants not to engage in Prohibited Activity within the out of home media industry.[4]

Prohibited Activity is defined as:

> [A]ctivity in which the Employee [Douglas] contributes her knowledge, directly or indirectly, in whole or in part, as an employee, employer, owner, operator, manager, advisor, consultant, agent, partner, director, stockholder, officer, volunteer, intern or any other similar capacity to an entity engaged in the same or similar business as the Employer [Catalyst].[5]

Douglas is prohibited from working for anyone engaged "in the same or similar

---

[3] Crawford Decl. Ex. 1 (Doc. No. 4-3) (Agreement); Crawford Decl. (Doc. No. 4-2) ¶¶ 4, 10; Douglas Decl. (Doc. No. 19-1) ¶ 28.

[4] Agreement at § 9(b).

[5] *Id.*

business" as Catalyst, except three of the largest advertising companies, Clear Channel Outdoor, Lamar, and Outfront.[6] The non-solicitation clause bars Douglas from "directly or indirectly" soliciting, contacting, and attempting to contact or meet with Catalyst's current or prospective customers.[7] Douglas is allowed to contact present or former Catalyst customers if employed by either of the three excepted companies. However, the exception does not extend to trade secrets, customer lists, or proprietary or confidential information. She cannot share that information with anyone.[8]

Douglas was terminated from Catalyst in November 2017.[9] One month later, she began working for City Outdoor, another outdoor advertising company.[10] City Outdoor does not sell any advertising space in Pennsylvania or New Jersey.[11] Nor does it have plans to develop advertising space in those states through 2019.[12]

Seeking to enforce the non-compete and non-solicitation provisions, Catalyst filed a motion for a preliminary injunction to enjoin Douglas from working at City Outdoor. It contends that, because City Outdoor also sells billboard space within the same Designated Market Area (DMA)[13] as Catalyst, Douglas is prohibited from working there.

---

[6] *Id.* at § 9(e).

[7] *Id.* at § 9(d).

[8] *Id.* at § 9(e).

[9] Crawford Decl. ¶ 28; Douglas Decl. ¶ 67.

[10] Mot. for Prelim. Inj. at 6 (citing Crawford Decl. ¶ 29); Douglas Decl. ¶ 76.

[11] Carr Decl. (Doc. No. 19-2) ¶¶ 12–15.

[12] *Id.*

[13] A DMA is a geographic area designated by the Nielsen Company to define a television market comprised of the major viewing audience for television stations. A DMA is used to evaluate audience data in the planning and buying of television advertising.

Catalyst does not contend Douglas has any confidential documents or has disclosed trade secrets. Rather, it maintains that she possesses knowledge of Catalyst's business and its development plans that could be used by City Outdoor.

## Discussion

In determining whether preliminary injunctive relief is available, we consider four factors: (1) the likelihood that Catalyst will succeed on the merits; (2) the threat of irreparable harm to Catalyst if an injunction is not granted; (3) whether granting an injunction will result in greater harm to Douglas than Catalyst; and (4) whether injunctive relief will be in the public interest. *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017); *N.J. Retail Merchants Ass'n v. Sidamon-Eristoff,* 669 F.3d 374, 385–86 (3d Cir. 2012).

If the moving party demonstrates that it can succeed on the merits and it will more than likely suffer harm if preliminary relief is not granted, then we consider and balance the remaining factors to determine if equitable relief is warranted. *Mazurek v. Armstrong,* 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997); *Reilly*, 858 F.3d at 179.

### *Likelihood of Success on the Merits*

Demonstrating a likelihood of success on the merits requires "a showing significantly better than negligible but not necessarily more likely than not." *Reilly*, 858 F.3d at 179. In other words, the plaintiff must show a reasonable probability of success on the merits. *Am. Exp. Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 366 (3d Cir. 2012). Catalyst has not done so.

To establish a claim for breach of a restrictive covenant, a party must

4

demonstrate that the restrictions imposed are reasonably necessary for the protection of the employer, and they are reasonably limited in duration and geographic scope. *Victaulic Co. v. Tieman*, 499 F.3d 227, 235 (3d Cir. 2007) (citing *Hess v. Gebhard Co. & Inc.*, 808 A.2d 912, 917 (Pa. 2002)); *WMI Grp., Inc. v. Fox*, 109 A.3d 740, 749 (Pa. Super. Ct. 2015) (citations omitted).

A restrictive covenant is reasonable when it is tailored to protect legitimate business interests. *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 424 (3d Cir. 2010). Trade secrets, confidential information, and goodwill constitute legitimate interests protectable through restrictive covenants. *See id.*; *Hess*, 808 A.2d at 920. Employers also have a legitimate business interest in prohibiting former employees from contacting and soliciting its clients. *See Quaker Chem. Corp. v. Varga*, 509 F. Supp. 2d 469, 479 (E.D. Pa. 2007) (citing *Graphic Mgmt. Assocs. v. Hatt*, 1998 WL 159035, at *17 (E.D. Pa. Mar. 18, 1998)).

Because the outdoor advertising industry is highly competitive in shared markets, Catalyst has an interest in protecting its development plans and rates. Specific information regarding new billboards is not readily shared outside of the development team. Typically, Catalyst salespersons are not included in the development process. But, Catalyst maintains that Douglas had more input than other salespersons. As a result, certain details, not shared with other salespersons, were revealed to her.

Douglas, as a member of the sales team, was familiar with the negotiated rates paid by Catalyst's clients. The standard prices, presented on "rate cards," are rarely the prices actually paid. They are starting points. Clients regularly negotiate lower rates. Although rate cards are not confidential, the actual amounts paid are not disclosed

5

because other agencies could use the information for its competitive advantage to underbid Catalyst. Thus, Catalyst has an interest in protecting the confidentiality of its trade secrets, development plans, and pricing information.

Next, we examine whether the restrictions are reasonably limited in duration and geographic scope. The non-compete and non-solicitation provisions are limited to two years from the date of termination. A two year limitation for restrictive covenants is generally upheld by Pennsylvania courts. *See Tantopia Franchising Co., LLC v. W. Coast Tans of PA, LLC*, 918 F. Supp. 2d 407, 415 n.7 (E.D. Pa. 2013) (collecting cases); *Metro Pub. Adjustment, Inc. v. Parker*, Civ. A. No. 2134 EDA 2013, 2014 WL 10979716, at *19 (Pa. Super. Ct. Mar. 18, 2014). In this case, the temporal limitation is reasonable.

The agreement has no geographic limitation. As written, it now covers the entire world. Having failed to define the geographic borders of the non-compete territory, Catalyst cannot now unilaterally impose a territorial limit. Nevertheless, suggesting that we can set the limits by red-lining the agreement, Catalyst urges that we define the reasonable limit as the New York and Philadelphia DMAs. We decline to do so.

First, defining the boundaries is not our job. *Synthes USA Sales, LLC v. Harrison*, 83 A.3d 242, 250–51 (Pa. Super. Ct. 2013) (citations omitted) ("In construing a restrictive covenant, courts do not assume that a contract's language was chosen carelessly . . . It is not the function of [the] Court to re-write it."); *see also Reading Aviation Serv., Inc. v. Bertolet*, 311 A.2d 628, 630–31 (Pa. 1973) (recognizing a risk of allowing courts to re-write restrictive covenants because employers could require unreasonable restrictions knowing the court would later revise); *WMI Grp.*, 109 A.3d at

6

749 (citation omitted) (stating the employer, as the drafter of an employment contract, to be in the best position to include a clause for the assignment of a restrictive covenant). Here, there is no geographic limitation to be revised. Instead, Catalyst wants us to create one to fill the void in the agreement.

Second, a Designated Market Area is not an appropriate measurement of competitive markets for the out-of-home media industry. It is a tool used to define an area of audience coverage for planning and buying television advertising. It measures the reach of television stations. It does not assess the coverage of billboards. The range of a television station is significantly different than that reached by billboards.

Third, the preferred way to define the appropriate geographic limitation once the former employee is working for another company is to determine the two companies' respective markets. Doing so will reveal whether the companies are actually competing for the same clients. If they are, lines may be drawn. If not, there is no competition to circumscribe.

Even if the New York and Philadelphia DMAs were used, the result is that Catalyst and City Outdoor do not compete in the New York market. Their business is the same. They both sell out-of-home media space. But, they operate in different locales. Catalyst primarily operates in the Philadelphia DMA, while City Outdoor operates in Manhattan and the Bronx. Catalyst has a billboard in Woodbridge, New Jersey on the New Jersey Turnpike. It is the only space it manages in the New York DMA. The remainder of its coverage is in the Philadelphia DMA. City Outdoor operates exclusively in New York City. It has no space in or near Woodbridge. Indeed, Douglas only sells space in New York. City Outdoor has no plans through 2019 to develop

7

space in Pennsylvania or New Jersey. Significantly, the billboard in Woodbridge does not compete with the billboards in Manhattan or the Bronx.

Catalyst would face competition only from companies operating billboards in the same areas where it operates because clients target very specific locations when choosing advertising space. Catalyst operates primarily in Southeastern Pennsylvania. It is developing a number of billboards in the Philadelphia area, and across the Delaware River in New Jersey. The only billboard Catalyst has identified as being outside the Philadelphia DMA is on the New Jersey Turnpike in Woodbridge, New Jersey. It has no plans to develop sites in Manhattan.[14] In other words, City Outdoor's billboards do not compete with Catalyst's billboards.

Because City Outdoor operates only in Manhattan and the Bronx, and has no plans to develop sites outside New York City, it will not interfere with Catalyst's business in Pennsylvania and New Jersey. Thus, because the two companies are not competing for the same business, Catalyst has not demonstrated a likelihood of success on the merits.

### *The Threat of Irreparable Harm to Catalyst*

The second factor requires Catalyst to show that harm, which cannot be remedied after trial, is likely. *Campbell Soup Corp. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992). There must be more than a mere risk of irreparable harm. We may only award preliminary injunctive relief upon a clear showing that irreparable harm is likely. *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 142 (3d Cir. 2017); *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 204 (3d Cir. 2014).

---

[14] Pl.'s Hrg. Ex. 12.

Catalyst has not met its burden. It has not shown a likelihood of irreparable harm. On the contrary, the evidence demonstrates there is no present or potential harm.

The parties agree that Douglas does not possess any confidential documentation belonging to Catalyst. Nor can she access any information on Catalyst computers. There is no suggestion that she took any confidential materials with her.

Regarding her purported knowledge of Catalyst's business and development, there is no evidence that she has used any of that to Catalyst's detriment. Nor is there evidence she has any information from Catalyst she can use at City Outdoor. Because Catalyst and City Outdoor do not sell billboard space in the same locale, one cannot conclude that any information Douglas may have gotten while at Catalyst could be valuable to her new employer. City Outdoor's billboards, which are located exclusively in New York City and the Bronx, do not compete with Catalyst's billboards in Philadelphia and New Jersey. Therefore, Catalyst has not shown a likelihood of irreparable harm.

Because Catalyst has not met its burden on the two threshold factors—likelihood of success and irreparable harm—we need not balance the remaining two. *See Reilly*, 858 F.3d at 179.

## Conclusion

Having failed to satisfy its burden to demonstrate that it is likely to succeed on the merits and that it will suffer irreparable harm, Catalyst is not entitled to a preliminary injunction. Therefore, we shall deny the motion for a preliminary injunction.